which is Manzi versus Kijakazi if I'm pronouncing that right. And for the appellant, we've got Josephine Girard and for the appellee, the commissioner of Social Security, we have Mr. Daniel Tallbridge. I hope I pronounced the names right. It's very hazardous business here to pronounce names but that's I think we got it right now. So proceed with Ms. Girard. Your Honor, I can't see that. Can you hear me? I can hear you. Yes. If there's an IT problem, give us a minute. We'll try to get it cleared up. You can't see the panel. I can see the panel, but they can't see me, right? I can see you. Oh, you can see me? Oh, good. Yes, you've got a very nice smile. Thank you. I'd rather not see me. So may I please the court. This is a case about aphasia. Louis Manzi's car went directly in front of his motorcycle and he flew off and hit his head in his body and he was in a coma for four weeks. So the issue in this case is that he had aphasia is a language disorder. He has a receptive language disorder. He was tested. He's in the fourth to first percentile for auditory memory and this was misunderstood by the ALJ and subsequently the district court affirmed it. Can I ask, I need a little orientation here. The benefit period, the period for which he's seeking benefits, if I got this right, October 15, 2016 to December 31, 2017. Is that correct? Well, that's the hearing date. Is that what you meant? Tell me the period for which he's seeking benefits. Well, in Social Security, so his decision was in 2017. 2019, I think, is the final ALJ's decision. No, I'm not asking that. I'm sorry. What's the period during which he claims he was disabled? 2016 from the motorcycle on. And until, lasting until when? Until presently. He's still disabled. Oh, until the present. I see. Yeah, he's disabled. So, he has aphasia, so he has no auditory memory or very little in the first percentile. So, the issue in this case is because of traumatic brain injury, because he hit his head, he has a stent in his brain. The evidence has to be shown with respect to before the last date of insurance, so December 31, 2017. Am I wrong on that, that that's the relevant period, the accident to December 31, 2017? Well, under Title II, right, it's on work benefits, but there's also SSI. But right, the injury goes back from the time that of the injury, the onset, but your application, if you didn't apply, like if you applied five years down the line, you might go back to the onset date, but the benefits would only be allowed one year before you apply. So, he applied in 2017, shortly after his accident. Am I answering the question? Yeah. Yeah, okay. So, it's a... Counsel, let me just get your perspective on another question. So, my understanding is that aphasia affects word choice, so... It's auditory... Okay, so there's receptive aphasia, and I guess there is expressive, but if you can't retrieve information, then you can't express it. It's sort of similar to dementia, where you can talk, but when you get... When someone asks you a question, you might be able to retrieve some information. It depends on the type of brain injury, but in his case, you can look at the hearing. He can't remember the day before, so he can respond. He's responding to the ALJ, but he can't remember his job. He can't remember the accident. He can't remember... And he's doing the best he can, and he also has a severe depression because of it. So, the issue, I think there's no problem with him having aphasia. It's the misunderstanding that because he can speak, he does not have a language problem, and that's the whole underlying confusion. The second issue, which is really important, is that this court and social security system have emphasized that credibility... A claimant can... It's a non-adversarial position... Can talk about how they experience the problem. In this case, and in other cases, if you have a cognitive problem or a mental problem, the ALJ, in this case, said, well, your impairment discredits your statement, which is making anyone with a cognitive or mental problem... Like going to a snowstorm without any clothes. If you have a physical problem, then you're credible, unless the doctor said, no, he doesn't have a physical problem, or she doesn't have a physical problem. But if you have a mental problem, the ALJ says, well, he can't remember things, so we're not going to take his statement. And that's important because that's a big body of evidence, what the claimant says. So, that's the two issues, the misunderstanding of aphasia, and the misunderstanding of the credibility issue. Counsel, does his aphasia fall in the receptive part? Yes. He's in the first percentile on auditory memory, working memory. I question whether you can have... If you have receptive aphasia, you're going to have expressive, because you can't process the communication. Did I answer that? Yeah, I was wondering whether the extent to which he had expressive aphasia. Well, he had it expressive because he can't answer questions. And his consultant examiner said he can't show up on time. So, if he had a job... But the ALJ pointed out, I mean, there are some reviews in the record. For example, the cognitive testing by Calvert in March of 2017 is referred to that showed things that were not as severe and did not show market impairments, where he says, you know, my brain is working really so much better right now. And then there's tests done and he's able to recall things. So, don't we have a situation where there's conflicting evidence and the ALJ has to sort it out? No, okay. So, when he originally... After he came out of the coma, he went to speech therapy in Texas and the speech therapist is Calvert. And she's also dealing with dysfluency. So, at that point, she starts from that he was 25% of his speech, of his articulation was reduced. And she was a very helpful person. Felt that he could improve. And he did improve. There's not a lot of, you know, dysfluency, like, you know, break in the conversation, but he can't retrieve the language. And that's the issue is whether that was addressed by the ALJ. The ALJ said, no, he doesn't have a speech problem. So, because he doesn't put it in the limitations and then he gives jobs that one couldn't do unless one could follow some... Help me out with the evidence in the record that says he cannot retrieve, that he's got that version of aphasia. So, the consultant examiner, that's Dr. Bilbrey. And I think that's 106. I think I know that by heart right now. Gives him the Weschler. And that's a standardized test. So, that's similar to like an IQ, similar to an X-ray of a body is an IQ test. It's standardized. It's across the norms. And he's in the first percentile. I think that's page 106. So, Dr. Bilbrey is the commissioner's examiner. So, it's not biased. And he states, he gives him a 25-word retrieval, and he can only do three. So, I'm just looking to have that straight out there. I will get back to that exact in the rebuttal. But there wasn't really any disagreement from the commissioner that he has Dr. Bilbrey. Dr. Bilbrey is given full credit. So, his examination and his testing with the Weschler, that shows no auditory memory. Or not no, but in the first percent. Counsel, let me ask you a question. And if I use up too much of your time, I'll give you some extra time. So, don't worry. Okay. But here's my question. Why does it matter whether a person can remember particular things, if it doesn't translate to an impact on ability to work? Let's say a person could not remember what was said to them the day before. But they could sit in a toll booth and get quarters or dollars or whatever charges these days for someone to pass. And there were jobs in the national economy in sufficient number like that. Why does it matter whether they can remember something that was said to them? Well, the whole point of a job is that you're performing a task for another person. So, it's not you're not an artist. You're following what the person said. So, for instance, in a toll booth. So, you tell the toll boother, please don't take any Susan B. Anthony quarters because we found they're fake. Okay. And please don't let that car that's got three wheels through the toll plot. Please ring this button. You can't, you know, you hear him say it and maybe you respond. But the next day, you forget about Susan B. Anthony and you let the three car in because you don't remember it because it's not part of your working memory. So, that's just on the toll booth. But also, Dr. Bilby points out he won't show up for work on time. He doesn't, he says he can't show up. He doesn't, he feels that that's not something he can do. So, that would be a significant problem, especially for toll booths. But for all the jobs. So, he hasn't really assessed any deficit and all the jobs, if you look at the jobs, there's no logical bridge between the jobs that the ALJ gave because he doesn't address this deficit. So, we have a decision without logic. Sorry. Thank you. Your time's up, but you're over your time. But I'm going to give you three minutes for rebuttal argument for planning. And if Mr. Talbert wants an extra three or four minutes, all he's got to do is ask. So, we'll now hear from Mr. Talbert. And Ms. Gerard can reserve three minutes for a rebuttal. Mr. Talbert, please proceed. Thank you, Judge Gould, and also for the extra time if necessary. Good afternoon. May it please the court. Daniel Talbert for the Acting Commissioner of Social Security, Kilolo Kijikazi. Substantial evidence supports the administrative law judge's finding that the claimant was not disabled. Now, no one disputes in this case that the claimant sustained significant injuries in an October 2016 motorcycle accident and required some significant rehabilitation after that. But by April 2017, the claimant made excellent progress in physical therapy, occupational therapy, and speech therapy. He was discharged from those programs, and he relocated from Maryland to California. He had, after that, no treatment at all through his date last insured in December 2017. And when he returned to treatment in early 2018 in California, he had fairly normal findings indicating that he had made a fairly good recovery from those injuries. I want to point out to correct a couple of statements. But the first thing I want to point to is with regard to the timing. My friend, Ms. Gerard, noted that the relevant period here goes apparently until the ALJ's decision for when the claimant had to prove disability. That's not correct. Judge Collins, I think it was, was correct in saying that this claimant had the burden to prove disability by December 31st, 2017, the date last insured. My reading of this record is that there is no additional SSI claim. It's Title II only, disability insurance benefits only. And if there's somewhere in the record that I missed that, I'm happy to take back my statement. But I'm fairly certain this is a disability insurance benefits only case. And the claimant had a burden to prove he became disabled by December 31st, 2017. Disabled by or disabled until? He needed to prove that, sorry. He was clearly disabled before then. There was a period he was in a coma. So you're not arguing he was not disabled while he was in the coma? Well, so I'm not trying to be difficult in my response here. But I think he was disabled in the ordinary sense of the word, not in the sense under the Social Security Act. And the reason for that is because disability for the Social Security Act requires at least a 12-month period. So Mr. Manzi had, I think we have to agree Mr. Manzi was not going to be able to work for probably that, you know, two-month period or so, perhaps in late 2016. But he made a recovery. And the question is sort of 12 months out from his injury was what was his function? What was his ability to work? So what he had to prove was that sometime before December 31st, 2017, he was disabled under the meaning of the act, which is to say he was unable to perform substantial gainful activity based on a condition and a level of limitation that would persist for more than 12 months. Well, you and I are on the same page on that one. But the problem I have with the government's position is that a great deal of the evidence that he's not disabled is he's being evaluated after that date. He's being evaluated after December 31st, 2017. And he may very well be okay by then. But that's not the question. So I don't think that's the state of the record here. It's certainly not the state of the ALJ's decision. The ALJ does mention some evidence from shortly after the date last insured. But the ALJ is mostly talking about evidence, as I read the record, or the decision from 2017. He's talking about the claimant's improvements in therapy, speech therapy, physical therapy. He's talking about the claimant's two examinations in September of 2017. And he's relying on the assessments from the four doctors from the state agency who reviewed those examinations and those treatment notes that were all from before the date last insured. So she is focusing on that. You can help me out. And it may be that you and your opposing counsel need to collaborate in helping me out on this. I've been told that he has very severe aphasia where he simply can't remember things. And this is a test done by Dr. Bilbrey. What was the date of that test? That would be September 2017. That's when Dr. Bilbrey... September 2017? Yes, Your Honor. So we're talking fairly late in that period. So I'm supposed to assume that he's fine a couple months later? No, Your Honor. So I think I have a couple of responses. I'll try to make sure I give as complete an answer as I can here. But the ALJ's finding about... If we're going to talk about issues with memory, the ALJ makes fairly specific findings based on the claimant's functioning in 2017, which includes Dr. Bilbrey's examination, and it includes Dr. Zukoski and Dr. Goldberg's review of that examination, those findings from Dr. Bilbrey, and the other records from 2017. And those doctors, Zukoski and Goldberg, are saying that this claimant has significant limitations, but they're not at a disabling level. Now, with respect to the claim that Mr. Manzi isn't able to remember anything, he just forgets things from one day to another, the ALJ didn't accept those allegations. She found those allegations inconsistent with the record. I think the ALJ talks about this in some detail on page 20 of the certified administrative record, and she mentions it elsewhere in the decision. But I think where we can most clearly point to an inconsistency there is the fact that the claimant was able to be what the doctors call a good historian at his consultative examinations. I think that's in both of the September 2017 ones, the Dr. Curran's physical examination and Dr. Bilbrey's psychological examination. He's telling those doctors, well, here was the injury. Here's what I've done in the past. I grew up in Pennsylvania or Maryland. I went to school there. I had these jobs. This is what I've done. And at the hearing, when the ALJ asks him questions, he says, I don't know anything. I don't know what I did. The attorney says, oh, you were an iron worker. He said, well, that's more than I ever knew. And he says, I don't remember one day to the next. I don't know if I have any friends. I don't know if I have any hobbies. I probably watch TV, but I don't know what I watch. I mean, frankly, the ALJ is saying it just doesn't add up. She's saying those allegations are not consistent with this record. And that's something that's the ALJ's responsibility to decide. And the ALJ here gave reason, supported by substantial evidence, for rejecting those allegations of such extreme memory limitations. Now, just to get back, if I could, to the opinions and the assessments that the ALJ is relying on, and I think this goes back to Judge Fletcher's earlier point about the ALJ focusing on evidence from after the date last insured. I maintain and just want to reiterate that the four doctors from the state agency who reviewed the claimant's records, they were reviewing the records I think in late 2017 and early 2018. So they were looking at it right around that date last insured period. They were focusing on the records that were from that relevant period. And they said, based on that evidence, based on those records, it showed that, yes, this claimant had severe impairments and significant limitations. But he retained the ability to perform a range of work that was simple and unskilled, fairly low stress. A lot of the significant stressors of work are taken out of, are taken away based on the residual functional capacity. And the ALJ, by asking questions of a vocational expert, found six different occupations in the light and sedentary categories that the claimant was able to perform. Substantial evidence supports that finding, and that is sufficient to establish that the claimant was not disabled under the act. Mr. Talbert, let me ask you a question just about the social security law. If the claimant here, Mr. Manzi, met the listing criteria, does that mean he's automatically disabled per se, or does that just create a presumption that he's disabled and that's rebuttable? So, Your Honor, if a claimant proves that he meets every element of a listing, he is disabled and he is entitled to disability benefits. That's basically how that works. It is a per se conclusion of disability. I would submit that in this case, although the claimant has argued about various listings, the arguments in the briefing do not even engage with the elements of those listings. And the claimant has certainly not shown, or in many ways even attempted to show, how he meets every single element of any listing. And as we note in our brief, this court has said in Kennedy v. Colvin, following the Supreme Court's, I think, Sullivan v. Zebley case, that the listings are set at a very high standard. And to meet it, a claimant has to prove every single element. And they're hard to prove. And that's why there's that per se kind of presumption, or whatever we might want to call it, of disability from the listings. If there's a particular listing, Judge Gould, that you're concerned about or you want to discuss, I'm happy to get into that. But our position, as noted in the brief, is that the claimant has just fallen utterly short of even alleging that he meets any particular listing, hasn't engaged with the elements of them, or even addressed what would support that. But again, I'm happy to address any specific listings or elements. I don't have a question. I think somewhere in my reading, I thought I read two different versions. One, that it was per se disabled. And the other, that there was a presumption. I don't know if the laws changed on that issue in recent years. But I'm taking it now from what you've said, that if all the elements are satisfied, then the person is disabled. And if that were true, if we concluded that, are we supposed to remand with the direction toward benefits? I suppose. I mean, I think, I feel like we're, okay. So I guess if this court concluded that the record established that a claimant satisfied every element of the listings, and there was no conflicting evidence in the record, and there was nothing that a fact finder really needed to resolve, I suppose I could think of a hypothetical situation where a remand for payment would then be appropriate. It's certainly not this case. And again, there's nothing that I see that the claimant has identified here that suggests that he meets any of the listings. And if, yeah, sorry. Well, I've sort of distracted you from your planned argument. So if you want that other three minutes, we can add it now. Thank you, Your Honor. The clerk, in the interest of candor, I think the clerk may have added that time already. I'm happy to address any questions the panel has. But with what's left on here, I'll take a look at, I'll just take a brief look at my notes and see if there are any other points I wanted to make. And, of course, I'm happy to answer any additional questions. Okay. Yes. All right. I mean, I think that based on specifically what Ms. Girard has chosen to focus on in the arguments today about the claims that her client is just not able to remember or retrieve any information, we maintain that that's just not what the record shows. That is what the claimant said at the hearing. That is what he alleged. But none of the evidence from 2017 suggests that. And the evidence from early 2018 that showed he had a normal and intact memory just like a month after his date last insured, as the ALJ noted, really undermines those specific allegations. So, and I think we say this in our brief, if somehow the claimant's memory deteriorated to such an extent that by the time of the ALJ's hearing, he was essentially nonfunctional as he presented himself, that wouldn't be enough to prove disability on this application. He would have had to file a subsequent SSI application or something like that. I'd like to put the court's mind at ease that there is no evidence of that kind of worsening because we do have those records from 2018 and 2019. And as we note in our brief, they continue to show that his memory and other functioning speech, language, et cetera, remains intact and normal. So for those reasons and for the reasons outlined in my brief, we would ask this court to affirm the ALJ's decision as well supported by substantial evidence following all the proper regulations and free of reversible legal error. Thank you, counsel. Thank you, Your Honor. Ms. Gerard, you can make your rebuttal argument now, please. Thank you, Your Honor. One is that all of the listings, you don't have to be disabled for a year and a half. You have to show that you possibly could be. So we have testing from aphasia. We have the MRI showing the stent in the brain. And confusingly, counsel is saying that at the hearing, this was worse than it was when he was originally damaged. The issue here is, you know, he does meet the listing 2.09. I think the reference to the hearing testimony is that the ALJ didn't find it credible. Right, right, Your Honor. And he was exaggerating. And one of the doctors, Rosenberg, put into his notes that he also thought that Manzi was exaggerating. Well, he has aphasia. So I can submit the medical since then. He wasn't able to get treatment because he didn't have any medical care until recently in California. But I have never heard any objection or thought that he can remember everything. And the testing shows that he's in the first and fourth percentile. It sort of matches with the fact that ALJ gave that full weight. So, I mean, he's giving full weight to the consultant examiner. Again, you're referring to Bilbray in September 2017. Right. I mean, I don't see that he gives it full weight when he says on or she says on page 24, she references it. But then sandwiches it between the earlier examinations or notes from Calvert and then from the subsequent notes in 2018 and sort of puts it in context. It seems clear she's weighing this and saying, I don't think it's it's there in light of the other things in the record. That's that's what ALJ to do. They do. But this goes to the credibility issue. And I do have to speed up is that if someone has aphasia, say we're going to say they have aphasia and you're going to the ALJ is going to say, well, because they're inconsistent. And this is a person who can't remember. We're going to discredit it because this doesn't match and that doesn't match. I mean, this is supposed to be non-adversarial. There's no reason to believe that he's that he's not telling the truth. Yes, there is. Yes. Yes, there is. And the ALJ thought so. The ALJ thought that the total inability to remember anything was not credible. He remembered something. Excuse me, not consistent with the other examinations and was supported by Dr. Rosenberg's comment, which is the ALJ specifically references that he was exaggerating his pain during the examination. Right. But exaggerating pain wasn't not he didn't refer to the auditory loss. So he had two different things going. He had damage on his side and that that did recover. But he also has damage in his you know, he's got a stint in his brain, two different issues. And I think that they were not they weren't they weren't he could have the ALJ could have given him another test similar to Bilberry's and then that would be OK. But he's using either pulling out the physical issues as saying that that's got to do with the auditory memory. No one tested him or or as to his memory after 2017, he accepted the ALJ accepted that. So, you know, I do hear what you're saying. It would at least you could have a remand where you could test him and find out. But there's no there's really no addressing aphasia. Only he says I'm having trouble with speech. His his partner says he's having trouble with speech. And I don't think this is you know, I mean, we don't know because we're not doctors, but there's no other assessment of his auditory memory. That that was a physical impairment, you know, his arms, whether he could walk or whether he was in pain. That's. Is that addressing that? I think that the judge just sort of circumvented the communication disorder. Is that. So my my summary is, is that he did meet the listing 2.09 and he wasn't assessed after that. 2.09 would have made him presumptively disabled. That's communication disorder. And receptive language was not at certainly at that time. He meets that listing because he he can't do receptive or expressive language. So I would say 2.09, you could. And it is. The council suggested that. I mean, we're really talking about credibility because. I you can't use someone's impairment against them. And yes, we can't figure out whether he had or hadn't it. Then go to another doctor. The ALJ can't make that determination. So, you know, I'm I'm. I'm trying to summarize because it's unknown, but it does appear from all the other medical records that he does have a hard time processing speech. It does make sense from the MRI and the testing that the damage in the front of his head makes sense that he would have problems with auditory language. If he has auditory language, the ALJ needs to address that in the residual functional. He doesn't. He says he has no problem with speech, but there's no doctor's report to back that up. And then I'm sorry. I'm sorry to interrupt, but you're more than three minutes over. Oh, I'm sorry. Your previously extended time. I'm not going to be like Chief Justice Rehnquist used to be and stop you in a mid-sentence, but you can conclude your sentence and then we should submit this. If you need anything else, please ask me. I'll submit this. Thank you. Thank you very much. Well, again, on behalf of the full panel, I think Mr. Thank Mr. Tolbert. These are important and challenging cases. And we'll dig into this further. And we very much appreciate counsel's argument. So the Manzi V. Kijikazi case shall now be submitted and the parties will hear from us in due course. And the court's adjourned for the day. All rise. This court for this session stands adjourned.
judges: FLETCHER, GOULD, COLLINS